**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Mamadou Cisse,

　　　　　Petitioner

v.

Michael Bernacke, et al.,

　　　　　Respondents

Case No.: 2:26-cv-00387-JAD-BNW

**Order Granting Habeas Petition in Part**

[ECF No. 10]

Petitioner Mamadou Cisse is a Senegalese citizen who entered the United States in 2023. He was arrested by local law enforcement in April 2025 on domestic-violence charges and was transferred to Immigration and Customs Enforcement (ICE) custody a few days later. Cisse was denied bond because of his pending charges, but he has been unable to contest the bond determination because the government has taken the position that he is detained under 8 U.S.C. § 1225(b)(2)(A), which requires mandatory detention without bond. He has been in ICE detention at the Nevada Southern Detention Center (NSDC) in Pahrump, Nevada, since his arrest.

Cisse seeks a writ of habeas corpus, alleging that the only statute that authorizes his detention is 8 U.S.C. § 1226(a), which provides noncitizens with the opportunity to seek bond, contest the denial of bond, and appeal the immigration court's bond determinations. I grant Cisse's petition in part. I join the hundreds of district courts and the Second Circuit in rejecting the government's § 1225(b)(2) arguments and find that he is detained under § 1226(a) instead. So Cisse is entitled to receive a bond hearing and any other procedural protections guaranteed by that statutory provision. But I do not grant Cisse's request that the government bear the burden of proof in that hearing because he hasn't shown that it is required to comport with due process.

**Background**

Petitioner Mamadou Cisse is a citizen of Senegal. He entered the United States in August 2023 by illegally crossing the Mexico/United States border. He was arrested by Border Patrol agents later that day and was eventually released into the United States.[1] In April 2025, Cisse was arrested by Las Vegas Metropolitan Police officers on felony domestic-violence charges and later pled no contest to a misdemeanor version of that crime.[2] ICE agents lodged an immigration detainer against him and took him into immigration custody on April 8, 2025.[3] Cisse applied for asylum, but that request was denied.[4] His Ninth Circuit appeal of that decision remains pending.[5]

Cisse has been in immigration detention at NSDC since his April 2025 arrest. Through counsel, he moved for a bond hearing on May 7, 2025.[6] On May 15, 2025, an immigration judge (IJ) denied bond because Cisse had "not established that he is not a danger to the community."[7] The IJ based the determination on the police report in his domestic-violence case, in which the victim alleged that Cisse "threatened to kill [her] with a box cutter and kicked [her]," although that statement "differed completely" from her testimony in court.[8] Cisse sought another bond

---

[1] ECF No. 11-2 at 3–4.

[2] ECF No. 11-6.

[3] ECF No. 11-7.

[4] ECF No. 11-3.

[5] *See Cisse v. Blanche*, Case No. 26-3421 (9th Cir.).

[6] ECF No. 9-1 at 2.

[7] *Id.* at 19.

[8] *Id.*

hearing in January 2026, but his request was rejected because he filed it in the wrong court.[9] He has not received any further opportunities to seek bond.

The government contends that Cisse is not entitled to any bond hearings because his detention is governed by 8 U.S.C. § 1255(b)(2)(A), a statute that applies to "applicants for admission," and detainees held under that authority are not entitled to a bond hearing. Cisse responds that the only authority that governs his detention is § 1226(a), which provides for bond-determination hearings. He asserts that the government's misclassification violates his procedural-due-process rights.

**Discussion**

**A.      This court has jurisdiction over Cisse's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[10] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under United States immigration laws.[11]

**B.      Section 1225(b)(2)(A) does not apply to Cisse because the government's interpretation of that provision is incorrect.**

The government contends that Cisse is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). That provision requires mandatory detention "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen]

---

[9] ECF No. 1-2 at 2.

[10] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[11] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

3

seeking admission is not clearly and beyond a doubt entitled to be admitted."[12]  The government contends that, though Cisse has been residing in the United States for about two years and was arrested within the interior of the United States, he remains an "applicant for admission" and is seeking admission, and thus falls under § 1225(b)(2)(A)'s mandatory-detention scheme.  It contends that § 1226(a), which grants noncitizen detainees the opportunity for release on bond, applies only to noncitizens who entered the United States legally but stay in the country illegally (i.e., arriving on a time-limited student visa, but staying past the visa's expiration).

This interpretation of the INA's pre-removal detention provisions upends decades of well-settled practice and has been the subject of hundreds of court cases and a circuit split.[13]  Before the switch, the government applied § 1226(a) to noncitizens already present within the United States who are inadmissible, while § 1225(b)(2)(A) was reserved for citizens seeking admission after lawfully entering the country at a border after inspection and authorization.  The government contends that its new interpretation is more consistent with the statute's text.

Considering the text, structure, and history of these provisions, I conclude that the government's new interpretation is incorrect.  In the interest of judicial economy,[14] I incorporate by reference and adopt District Judge Richard F. Boulware II's statutory analysis of the INA in *Jacobo Ramirez v. Mullin*,[15] finding that § 1225(b)(2)(A) cannot be read to encompass

---

[12] 8 U.S.C. § 1225(b)(2)(A).

[13] *Compare Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *with Cunha v. Freden*, __ F.4th __, 2026 WL 1146044 (2d. Cir. 2026). The Ninth Circuit has at least one pending appeal confronting this issue.  *See Rodriquez-Vasquez v. Bostock*, Case No. 25-6842 (9th Cir.).

[14] *See, e.g.*, *Hernandez-Luna v. Noem*, 2025 WL 3102039, at *5 (D. Nev. Nov. 6, 2025) (noting that "much ink has been spilled on this [issue] in hundreds of orders issued in the last couple of months" and collecting cases).

[15] *Jacobo Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026).  Specifically, I incorporate sections IV and VI.C.1, 2, and 4s' findings and conclusions concerning the text and

noncitizens who are already present in the United States, as opposed to those detained at its

borders.  And to the extent that the government relies on the Fifth and Eighth Circuits' opinions

finding that the government's interpretations are correct, I incorporate by reference and adopt the

conflicting findings the Second Circuit reached in *Cunha v. Freden.*[16]  After careful review and

consideration, I conclude that the reasoning in those opinions faithfully analyzes the statute and

comes to the only plausible interpretation: § 1225(b)(2)(A) applies at the borders to noncitizens

who seek admission to this country, and § 1226(a) applies to those noncitizens already present in

the United States who are determined to be inadmissible and placed in removal proceedings.  So,

because it is undisputed that Cisse has been residing in the United States since 2001 and is not

"seeking admission" under § 1225(b)(2),[17] § 1226(a) governs his detention.

**C.     Cisse's detention is governed by § 1226(a) and entitles him to certain due-process procedures that he has not received.**

> ***1.     Noncitizens detained under § 1226(a) are entitled to various procedures related to seeking release on bond.***

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is

to be removed from the United States."  The statute permits a noncitizen held under this

---

structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and the prior agency practice.

[16] *Cunha*, 2026 WL 1146044 (2d. Cir. 2026).  To the extent that the government relies on the BIA's holdings in *Matter of Q. Li*, 29 I. & N. Dec 66 (BIA 2025), I do not find that nonbinding authority persuasive. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385, 392 (2024). I incorporate by reference Chief District Judge Andrew P. Gordon's well-reasoned rejection of the government's reliance on *Matter of Q. Li* in *Moya v. Blanche*, 2026 WL 1481604, at *4–8 (D. Nev. May 27, 2026).

[17] Though Cisse is appealing the immigration court's determinations on his asylum application, it is well-established that applying for asylum is not "seeking admission" under the INA.  *See Sanchez v. Mayorkas*, 593 U.S. 409, 415–16 (2021) (noting that "lawful status and admission . . . are distinct concepts in immigration law" and acknowledging that "some forms of status (*e.g.*, asylum) do not require admission").

authority to be detained or released on bond and with conditions.[18]  When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[19]

The noncitizen may then "request a bond hearing before an IJ at any time before a removal order becomes final" to contest the initial custody determination.[20]  At that hearing, the IJ considers "various factors . . . including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country" to determine whether the noncitizen should remain detained or if release (on bond or with other conditions) is appropriate.[21]  The noncitizen may be represented by counsel and can submit evidence in his favor.[22]  He may also appeal the decision to the Board of Immigration Appeals (BIA).[23]  A noncitizen detained under § 1226(a) may also request a redetermination hearing if he experiences a material change in circumstances.[24]  He can appeal the IJ's decision of that redetermination hearing to the BIA too.

---

[18] 8 U.S.C. § 1226(a)(1)–(2).

[19] 8 C.F.R. § 236.1(c)(8).

[20] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[21] *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 U.S.C. § 1226(a)(2)).

[22] *Id.* (citing 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)).

[23] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

[24] 8 C.F.R. § 1003.19(e).

### 2. Noncitizen detainees are also entitled to due process of law in immigration proceedings.

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[25] But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[26] The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[27] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[28] Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[29]

---

[25] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[26] *Id.* at 1206.

[27] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[28] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

[29] *Mathews*, 424 U.S. at 335 (cleaned up). The government contends that this court need not engage in the *Mathews* analysis, relying primarily on the Supreme Court's reasoning in *Demore v. Kim*, 538 U.S. 510. In that case, the High Court rejected a facial challenge to § 1226(c), another immigration-detention statute that mandates detention without bond for noncitizens in removal proceedings who have been convicted of certain crimes. *Demore*, 538 U.S. at 527–28. But Cisse effectively raises an as-applied challenge to his detention under § 1226(a), not § 1226(c), so *Demore* isn't directly on point. And following *Demore*, the Ninth Circuit has applied *Mathews* to challenges to detention under § 1226(a). *See Rodriguez Diaz*, 53 F.4th at 1206–07; *see also Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024) (finding that *Demore* left "open the question whether prolonged detention under § 1226(c) without a bond hearing will *at some point* violate an individual detainee's due process rights" and applying *Mathews* to a noncitizen's prolonged-detention challenge). So I follow the Ninth Circuit's lead and conclude

### 3.    *Cisse's 14-month detention without due process warrants relief.*

Cisse contends that he was not given adequate due-process protections to challenge his detention.  He alleges that he was given one bond hearing about a month into his detention.  At that hearing, the IJ denied bond based on his pending charges for felony domestic violence.  He has not received any further bond hearings, even though the basis for the IJ's initial denial has changed; Cisse pled no contest to a lesser misdemeanor offense, and his felony charges were dropped.[30]  The government takes the position that he is not entitled to any bond hearings because he is detained under § 1225(b)(2)(A) and, even if he was, the *Mathews* factors do not support his request for relief.

"An individual's private interest in freedom from prolonged detention is unquestionably substantial."[31]  Cisse has been detained for about 14 months.  Under Ninth Circuit precedent, that's considered "prolonged."[32]  But when evaluating Cisse's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[33]  It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[34]  Here, though Cisse received one bond-redetermination hearing, the government's position that Cisse is subject to mandatory detention under § 1225(b)(2)(A) forecloses his ability to seeking additional custody-determination hearings that are otherwise available for § 1226(a) detainees.  While I

---

that an individualized determination of the risks of the erroneous deprivation of Cisse's rights is required here.

[30] ECF No. 9-4.

[31] *Rodriguez Diaz*, 53 F.4th at 1207.

[32] *Id.* (finding 14 months of detention to be prolonged).

[33] *Id.* at 1208.

[34] *Id.*

acknowledge that his detention is now prolonged because he has appealed the immigration court's asylum determination to the Ninth Circuit, under normal circumstances he would have been given the opportunity to contest his bond determination and seek a new hearing based on changed circumstances—options that he has been deprived of thus far. So on balance, I find that the deprivation of Cisse's liberty interest weighs in favor of relief.

I also conclude that there is a substantial risk of erroneous deprivation of Cisse's interest under the government's reliance on § 1225(b)(2)(A)'s mandatory-detention scheme. Cisse has been detained for more than a year while his removal proceedings have been pending, and throughout that time he had no opportunity to contest his bond determination or seek reconsideration based on changed circumstances. I find that Cisse suffers a severe risk of erroneous deprivation of his liberty interest absent these procedures, which also weighs in favor of relief.

It is undisputed that the government has a strong interest in enforcing immigration law, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[35] But in light of the fact that the government hasn't followed its own bond-redetermination procedures, I cannot conclude that the government's interests outweigh the petitioner's in this case. The parties' interests are not mutually exclusive: the government's interest in enforcing immigration law and protecting the public from dangerous noncitizens can still be served while offering due-process protections to the noncitizens in its custody. So I hold that the government violated Cisse's due-process rights when it deprived him of the procedural protections normally afforded to § 1226(a) detainees.

---

[35] *Id.* at 1208.

> **4.**     ***DHS must give Cisse a bond-redetermination hearing, but the burden will remain on Cisse at that hearing.***

To cure his constitutionally deficient detention, Cisse asks for "a constitutionally adequate hearing in which he can seek release on bond, with the burden on the government to prove that he should continue to be detained."[36]  He asserts that, if he "is not granted such a hearing, he must be released from his unconstitutional detention."[37]  Under BIA precedent, bond hearings under § 1226(a) place the burden on the noncitizen to show that he is not a danger or flight risk and is thus entitled to bond.[38]  Cisse doesn't explain why the burden must shift to the government, and the government doesn't respond to this request.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit held that placing the burden on the petitioner in a second bond hearing under § 1226(a) did not facially violate the due-process clause.[39]  The panel rejected the petitioner's argument that the burden must instead be placed on the government to show by clear and convincing evidence that the noncitizen is dangerous or a flight risk to comport with due process.[40]  It acknowledged some of the reasons other courts have held that such a burden shift is necessary—i.e., placing the burden on noncitizens risks erroneous deprivation because they "face tremendous language and cultural barriers, have difficulty obtaining evidence, and often lack financial resources to hire an attorney"—but concluded that

---

[36] ECF No. 10 at 13.

[37] *Id.*

[38] *See Matter of Guerrera*, 241 I. & N. Dec. 37.

[39] *Rodriguez Diaz*, 53 F.4th at 1211.

[40] *Id.* at 1211–12.

those barriers "bear no relation to the facts of this case" because Rodriguez Diaz had an attorney, was able to present evidence, and can speak English.[41]

Cisse's situation is indistinguishable from *Rodriguez Diaz*. Cisse received at least one bond hearing about a month after he was initially detained, and he has not shown that he was unable to communicate or present evidence at that hearing. Indeed, it appears that he retained counsel to submit his first bond-hearing request. Cisse has also not alleged that he would be unable to employ an attorney or communicate with the immigration court in any future hearings. And though the length of Cisse's detention without the opportunity to seek bond has significantly strained his liberty interest, nothing in this record suggests that he risks the continued erroneous deprivation of his rights if he is now provided with the due-process protections normally available under § 1226(a). So while I hold that the risk of erroneous deprivation of Cisse's liberty interest is high without an IJ hearing, I do not find that the burden at that hearing should be on the government to show that he is a threat or a flight risk.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Mamadou Cisse's petition for a writ of habeas corpus **[ECF No. 10] is GRANTED IN PART. Respondents must schedule a bond hearing for Mamadou Cisse before an immigration judge within the next 30 days. That hearing must be conducted in accordance with 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1(d), and any applicable BIA decisions and guidance.** The petition is DENIED to the extent it requests that the hearing require the government to bear the burden of showing by clear and convincing evidence that Cisse is a danger to the community or a flight risk.

---

[41] *Id.*

IT IS FURTHER ORDERED that the respondents are PERMANENTLY ENJOINED from denying Mamadou Cisse the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

IT IS FURTHER ORDERED that if an individualized bond hearing is not provided by July 25, 2026, Mamadou Cisse must be released from ICE custody until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

IT IS FURTHER ORDERED that the Clerk of Court is directed to CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
June 25, 2026

12